

# IN THE SUPREME COURT OF GUAM

## PEOPLE OF GUAM,
Plaintiff-Appellee,

**v.**

## ERTY YERTEN,
Defendant-Appellant.

Supreme Court Case No.: CRA19-018
Superior Court Case No.: CM0411-18

## OPINION

## Cite as: 2021 Guam 8

Appeal from the Superior Court of Guam
Argued and submitted on January 27, 2021
Via Zoom video conference

Appearing for Defendant-Appellant:
Stephen P. Hattori, *Esq.* (Briefed)
Public Defender

Rocky P. Kingree, *Esq.* (Briefed)
David J. Highsmith, *Esq.* (Argued)
Assistant Public Defenders

Public Defender Service Corp.
779 Rte. 4
Sinajana, GU 96910

Appearing for Plaintiff-Appellee:
Christine Santos Tenorio, *Esq.*
Assistant Attorney General
Office of the Attorney General
Prosecution Division
590 S. Marine Corps Dr., Ste. 801
Tamuning, GU 96913



**E-Received**
7/29/2021 4:44:42 PM

BEFORE: F. PHILIP CARBULLIDO, Chief Justice; ROBERT J. TORRES, JR., Associate Justice; KATHERINE A. MARAMAN, Associate Justice.

**CARBULLIDO, C.J.:**

[1]     Defendant-Appellant Erty Yerten appeals his criminal conviction of one count of Driving While Impaired (as a Misdemeanor).  Yerten challenges the trial court's refusal to rule on a Motion to Suppress filed after the court's designated motions deadline and argues that a *de novo* review of the motion would show that the police lacked reasonable suspicion to stop Yerten's vehicle, requiring suppression of all evidence stemming from the traffic stop under the exclusionary rule.  We disagree and affirm.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

[2]     Officer Jon Derrick San Nicolas arrested Erty Yerten after a traffic stop, and Yerten was charged with Driving While Impaired (As a Misdemeanor).  In a Scheduling Order, the trial court set an unambiguous motions cut-off date and initially scheduled the jury trial for a month later.  After the motions cut-off date, Yerten moved to suppress all evidence.  He did not request a continuance in accordance with Criminal Procedure Rule ("CR") 1.1(f) of the Local Rules of the Superior Court of Guam or otherwise establish good cause why the court should accept a late motion.  The trial did not begin as scheduled; instead, the court scheduled a hearing to address the suppression motion.  After a brief hearing without evidence, the court issued an order denying the motion as untimely.  The court then continued the trial date three more times, ultimately scheduling it months later.

[3]     Yerten's counsel renewed his objection at trial to any reference to statements made by an anonymous tipster.  The court nonetheless admitted the testimony of Officer San Nicolas, and the officer was the only witness called.  Officer San Nicolas testified that he was on patrol around

midnight when he heard a report over the police radio of a "possible drunk driver" on Route 1. The report came from dispatch that a caller had reported a license plate number, make and model, and direction of travel of a vehicle, and Officer San Nicolas testified that he acknowledged the report and "proceeded to locate the vehicle" with a matching description and license plate driving westbound on Route 1. Transcript ("Tr.") at 24, 26-28 (Jury Trial, Oct. 3, 2019). Officer San Nicolas activated his lights and followed the vehicle, the driver of which was later identified as Yerten. Rather than pulling to the right side of the road, Officer San Nicolas testified that Yerten executed a left turn at an intersection, disobeying a red light, and pulled into a gas station.

[4]    Yerten then opened his door and exited the vehicle, nearly falling to the ground. Officer San Nicolas instructed Yerten to get back into the vehicle and close his door, but Yerten did not comply. When the officer approached, he observed Yerten "flush faced, [with] bloodshot, watery eyes, [and] a strong odor of intoxicating beverage emitting from his breath and person." *Id.* at 29. Officer San Nicolas also testified that Yerten had "a heavy slur in his speech" and failed to produce a license, registration, or proof of insurance. *Id.* at 29-30. After Yerten refused to submit to a field sobriety test or a breath test, Officer San Nicolas placed him under arrest.

[5]    The jury convicted Yerten of one count of Driving While Impaired (as a Misdemeanor), in violation of 9 GCA §§ 92102(a) and 92105 (added by Guam Pub. L. 34-107:5 (June 5, 2018)). Yerten timely appealed.

## II. JURISDICTION

[6]    This court has jurisdiction over an appeal from a final judgment of conviction under 48 U.S.C.A. § 1424-1(a)(2) (Westlaw through Pub. L. 117-27 (2021)), 7 GCA §§ 3107 and 3108(a) (2005), and 8 GCA § 130.15(a) (2005).

## III. STANDARD OF REVIEW

[7]     "A trial court's grant or denial of relief from a section 65.45 waiver [for failure to raise defenses or objections prior to trial] is reviewed for an abuse of discretion or clear legal error." *People v. White*, 2005 Guam 20 ¶ 14 (citing *United States v. Crowley*, 236 F.3d 104, 110 (2d Cir. 2000)).     An abuse of discretion is "that 'exercised to an end not justified by the evidence, a judgment that is clearly against the logic and effect of the facts as are found.'" *People v. Evaristo*, 1999 Guam 22 ¶ 6 (quoting *People v. Quinata*, 1999 Guam 6 ¶ 17).     "Where a motion to suppress is grounded on a Fourth Amendment violation, the issue of the lawfulness of a search or seizure is reviewed *de novo*." *People v. Chargualaf*, 2001 Guam 1 ¶ 12.

## IV. ANALYSIS

### A. The Trial Court Did Not Abuse Its Discretion by Declining to Hear Defendant's Untimely Motion to Suppress

[8]     Yerten failed to file his motion to suppress before the court's motions deadline and failed to request an extension under CR 1.1(f) or show good cause as to why the motion was not timely. Yerten nonetheless argues that the court erred in declining to hear the motion and declining to suppress the evidence because the law requires only that a motion to suppress be filed "prior to trial." Appellant's Br. at 5-6 (Feb. 26, 2020).     Yerten also appears to argue that because the court *sua sponte* continued the trial date three times after the motion was filed, and because continuances may be granted only for good cause, CR 1.1(e), the trial court must have found good cause to continue the trial date and therefore must have also found good cause to hear the motion to suppress after the motion cut-off date. *Id.* at 6-7.     The People respond that Yerten failed to request a continuance as required under CR 1.1(f) or to show good cause why relief from the waiver was appropriate and that denial of the motion was therefore within the discretion

of the trial court.  Appellee's Br. at 6-7 (Mar. 27, 2020).  Without a showing of good cause, the People argue, appellate review of the merits is precluded.  *Id.* at 7-8.

### 1.  The motion to suppress was untimely; the trial court did not err in denying it

[9]     A motion to suppress evidence must be raised before trial.  8 GCA § 65.15(c) (2005); *see also People v. Chong*, 2019 Guam 30 ¶ 9.  Title 8 GCA § 65.45 provides that the failure of a party to make a request which must be made before trial "at the time set by the court pursuant to § 65.15, or prior to any extension thereof made by the court, shall constitute a waiver thereof, but the court for cause shown may grant relief from the waiver."  8 GCA § 65.45 (2005).  Although the language of section 65.45 refers to "cause shown," we have repeatedly interpreted this provision to require good cause, particularly when read alongside CR 1.1(e) and (f).  *E.g.*, *White*, 2005 Guam 20 ¶ 14; *People v. Diaz*, 2007 Guam 3 ¶ 51.  Section 65.45 requires the request to be made "at the time set by the court," and CR 1.1(e) provides that scheduling orders or any portion thereof "shall not be vacated or changed without good cause determined by the assigned judge and described on the record orally or in writing."  CR 1.1(e).  This court in *People v. White* held that a trial court "committed clear legal error by excusing the waiver *without* a showing of cause as required by Title 8 GCA § 65.45."  2005 Guam 20 ¶ 15 (emphasis added).  CR 1.1(f) further provides that:

> No continuance shall be granted merely on the stipulation of the parties.  If a party is unable to comply with the established schedule despite its diligence, that party shall move for a reasonable extension of time, specifically setting forth the basis for the requested extension, which shall be considered by the court in determining good cause pursuant to subsection (e) above.

CR 1.1(f).

[10]     Here, the trial court set an unambiguous motions cut-off date and scheduled the jury trial for a month later.  Yerten did not request a continuance under CR 1.1(f) or otherwise establish

good cause why the court should accept a late motion. Defense then moved to suppress all evidence more than three weeks after the cut-off and less than a week before trial. The trial did not start as originally scheduled, and the People argue the original trial date was "impliedly vacated" when the court scheduled a hearing to address the suppression motion. Appellee's Br. at 3. At the brief suppression hearing, defense counsel admitted that his motion was untimely and again failed to assert any good cause why relief from the waiver should be granted. There was no change of counsel or new evidence previously unknown to the defendant which might have justified a continuance. The only explanation offered by defense counsel was: "It is my complete fault, I lost – I couldn't figure out what name it was I was supposed to file the motion [under]." Tr. at 2-3 (Mot. Hr'g, Apr. 30, 2019). An attorney's neglect is not good cause, and Yerten fails to assert or show good cause now on appeal.

[11]     Because the motion to suppress was untimely and Yerten failed to establish good cause why relief from the automatic waiver should be granted, the trial court was within its discretion to deny the motion. Like in *White*, granting the relief without good cause would have amounted to "clear legal error." 2005 Guam 20 ¶ 15.

### 2. Subsequent scheduling changes to the trial date are not relevant to the question of the timeliness of the motion to suppress

[12]     Yerten argues that the court "factually vacated" the scheduling order by vacating the original date for jury selection and trial. Appellant's Br. at 6. The People counter that the late motion to suppress caused the first continuance, although the "Notice of Hearing" scheduling the motion hearing was filed after the designated trial date. Appellee's Br. at 9-10. After failing to hold the trial as originally scheduled and denying the motion to suppress, the court continued the trial date three more times, ultimately scheduling it for months later. Rule 201 of the Guam Rules of Evidence ("GRE") permits this court to take judicial notice of adjudicative facts that are

"capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned," GRE 201(b)-(c), including the records of the trial court in this and other cases, *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980) ("[A] court may take judicial notice of its own records in other cases, as well as the records of an inferior court in other cases."). Although the record does not reflect the reasons for the continuances, we take judicial notice from the court's calendar that the trial judge had eleven other trials between the original trial date for Yerten and its eventual start, for an average of one trial every two weeks. Superior Court of Guam Court Calendar (Apr. 8, 2019 to Sept. 30, 2019). In any event, subsequent changes to the trial schedule do not cure an already untimely motion without the requisite showing of good cause.

### 3. We decline to decide whether an untimely motion to suppress for an alleged Fourth Amendment violation is subject to plain error review

[13]    In *People v. Chong*, we adopted the distinction in *United States v. Olano*, 507 U.S. 725, 733-34 (1993), between a forfeiture—failure to make a timely assertion of a right—and a waiver—the intentional relinquishment of a known right. *Chong*, 2019 Guam 30 ¶¶ 9-10. We recognized that a waiver precludes appellate review, while a forfeiture is subject to plain error review. *Id.* ¶¶ 9, 11 (finding that failure to move to suppress incriminating statements on Fifth Amendment grounds amounted to forfeiture subject to plain error review). Likewise, in *People v. Mateo*, this court applied plain error review when a defendant argued on appeal that the trial court erred in admitting evidence but failed to move to suppress it or object to it at trial. 2017 Guam 22 ¶ 29.

[14]    The People concede that the failure to move to suppress before the motions deadline as required by section 65.45 constituted a forfeiture, but still argue plain error review does not apply here because the antecedent to such review would be a showing of good cause to excuse

the failure to make a timely motion or prejudice to the defendant. Appellee's Br. at 8; *see also United States v. Johnson*, 415 F.3d 728, 730-31 (7th Cir. 2005).

[15]     We decline to decide at this time whether an untimely motion is subject to plain error review without showing good cause because it is unnecessary to the disposition of this case—the court ruled on the merits of the motion to suppress when the defense objected to the evidence during trial. There was no prejudice to Yerten, and we may review the admission of the evidence *de novo*.

**B.  The Officer Had Reasonable Suspicion to Make the Stop; the Evidence Was Admissible**

[16]     A *de novo* review of the record shows that the arresting officer had reasonable suspicion to stop Yerten's vehicle, and the trial court did not err in admitting evidence stemming from the stop. Yerten argues that "all evidence from the onset of detention should be suppressed under the exclusionary rule" because there was no reasonable suspicion to stop Yerten. Appellant's Br. at 4-5. According to Yerten, the tip was unreliable because it came from an anonymous source and the officer received it through the intermediary of an unknown dispatcher. *Id.* He further contends that the tipster failed to report criminal conduct, and the officer conducted no independent police work and did not witness any suspicious or illegal activity before pulling over Yerten's vehicle. *Id.* The People contend that the tip was reliable because the caller made a firsthand, contemporaneous report alleging that the crime of drunk driving was occurring and that the officer "observed Yerten commit an additional traffic violation before the stop." Appellee's Br. at 11, 14.

[17]     The Fourth Amendment of the U.S. Constitution protects against unreasonable searches and seizures, U.S. Const. amend. IV, and is made applicable to Guam by 48 U.S.C.A. § 1421b(c) of the Organic Act of Guam. *People v. Johnson*, 1997 Guam 9 ¶ 4. The Fourth Amendment

requires that a law enforcement officer making a traffic stop have "reasonable suspicion that an individual was engaged in or is about to be engaged in illegal conduct." *People v. Taman*, 2013 Guam 22 ¶ 22 (quoting *People v. Cundiff*, 2006 Guam 12 ¶ 40); *see also Terry v. Ohio*, 392 U.S. 1, 20-21 (1968). Reasonable suspicion requires "'some minimal level of objective justification' for making a stop, but considerably less than the level of suspicion required for probable cause." *People v. Mansapit*, 2016 Guam 30 ¶ 13 (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)). To determine whether reasonable suspicion exists, courts look to both the "content of information possessed by police and its degree of reliability," *Johnson*, 1997 Guam 9 ¶ 5 (quoting *Alabama v. White*, 496 U.S. 325, 330 (1990)), which must be "viewed from the standpoint of an objectively reasonable police officer," *Mansapit*, 2016 Guam 30 ¶ 9 (quoting *Ornelas v. United States*, 517 U.S. 690, 696 (1996)). Firsthand observations from the tipster of an ongoing event can add support to a finding of reasonable suspicion. *Id.* ¶ 15.

[18]    Adopting the standard of *Alabama v. White*, 496 U.S. 325 (1990), this court in *Johnson* held that where reasonable suspicion is based on an anonymous tip, such tip must be "sufficiently corroborated by independent police work," with the tip's "indicia of reliability" determining the amount of further independent investigation required. *Johnson*, 1997 Guam 9 ¶¶ 5-6 (quoting *White*, 496 U.S. at 330).[1] In *Johnson*, for example, the court found that a tip was unreliable and did not support reasonable suspicion when the anonymous informant made his tip in person yet "specifically refused to identify himself or otherwise expose himself to any risk of prosecution" and was "possibly intoxicated" when he communicated the information. *Id.* ¶ 7. In

---

[1] A portion of the rationale in *People v. Johnson* misreads the holding of *Alabama v. White*. While the record in *White* does include future predictions made by the informant which, when verified, tended to support the reliability of the tip because it showed "inside information—a special familiarity with respondent's affairs," 496 U.S. at 332, the case does not appear to support the notion that "corroboration must ordinarily involve predictive facts of the suspect's behavior" in every case, *Johnson*, 1997 Guam 9 ¶ 6. Verified predictions may be a potent indication of a tip's reliability, but nowhere in *White* does the U.S. Supreme Court suggest that they are the only valid indicators of reliability.

*People v. Mansapit*, we held a tip was insufficient to support reasonable suspicion for a stop because the tip contained only a "vague mention of weapons" without reliably asserting conduct that would amount to an illegal act. 2016 Guam 30 ¶¶ 10, 15.

[19] Here, the tip, though anonymous, contained indicia of reliability, and the concerns of the tipster were confirmed by the officer witnessing Yerten commit another traffic violation. The tip's indicia of reliability included confirmation that a car matching the description and license plate was located driving in the vicinity and direction indicated by the tipster. That the tipster was contemporaneously observing the alleged criminal conduct while reporting it firsthand lends additional weight. *See Mansapit*, 2016 Guam 30 ¶ 15. But unlike the tipster in *Mansapit*, the tipster here specifically alleged criminal conduct—that of driving while drunk. After locating the vehicle described over the police radio, Officer San Nicolas observed Yerten illegally run a red light, execute a left turn, pull into a gas station, and nearly fall down while exiting the vehicle. These personal observations, with the information provided over the radio about the anonymous tip, meet the low threshold of "some minimal level of objective justification" based on the standard of a reasonable officer and establish the requisite reasonable suspicion to make the traffic stop prior to the arrest.

//

//

//

//

//

//

//

## V.  CONCLUSION

[20]    The trial court did not abuse its discretion by declining to hear the untimely suppression motion, and the motion to suppress was rightfully denied because the arresting officer had reasonable suspicion to pull Yerten over.  We **AFFIRM** the judgment of conviction.

|  |  |
|---|---|
| /s/ | /s/ |
| ROBERT J. TORRES | KATHERINE A. MARAMAN |
| Associate Justice | Associate Justice |

/s/
F. PHILIP CARBULLIDO
Chief Justice